IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JACQUELINE S. DANCY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action Number |
| v. ) | **2:12-cv-2997-AKK** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **ACTING COMMISSIONER OF** ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Jacqueline Dancy brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the adverse decision of the Administrative Law Judge ("ALJ"), which has become the final decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the ALJ's decision is supported by substantial evidence. Therefore, the court will **AFFIRM** the decision denying benefits.

**I. Procedural History**

Dancy protectively filed her application for disability insurance benefits and supplemental security income on August 27, 2008, alleging a disability onset date of March 1, 2005, (R. 110-119), due to the effects of a broken left foot and right knee problems, (R. 157). After the SSA denied her application on November 6, 2008, (R. 63, 65), Dancy requested a hearing, (R. 79-82).  At the time of the hearing on February 10, 2010, Dancy was forty-seven years old, (R. 44), and had a tenth grade education, (R. 52).  Dancy had past relevant medium,

skilled work as a cook, light, unskilled work as a cashier, and light, semi-skilled work as a server. (R. 35). Dancy has not engaged in substantial gainful activity since March 1, 2005, the alleged onset date. (R. 27).

The ALJ denied Dancy's claim on April 9, 2010, (R. 25-36), which became the final decision of the Commissioner when the Appeals Council refused to grant review on July 16, 2012, (R. 1-6). Dancy then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin,* 849 F.2d at 1529 (quoting *Bloodsworth,* 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the

Commissioner's findings.  *See Martin,* 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb,* 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a

claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart,* 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id.* However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale [v. Bowen,* 831 F.2d 1007, 1011 (11th Cir.1987) ].

*Elam v. R.R. Ret. Bd.,* 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt,* 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

4

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale,* 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id.*

### IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Dancy had not engaged in substantial gainful activity since the alleged onset of her disability, and therefore met Step One.  (R. 27).  Next, the ALJ acknowledged that Dancy's severe impairments of status post fracture of left ankle and asthma met Step Two.  *Id.*  The ALJ also noted that Dancy had the non-severe impairment of an ovarian cyst.  (R. 29).  The ALJ then proceeded to the next step and found that Dancy did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  *Id.*  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel,* 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Dancy

> has the residual functional capacity [RFC] to occasionally lift and carry 10 pounds; frequently lift and carry 5 pounds; stand and walk at least 2 hours out of an 8 hour day; sit at least 6 hours out of an 8 hour day; is unable to work around unprotected heights or dangerous or moving equipment; [and must] avoid ladders, ropes and scaffolds.

*Id*.  Based on this assessment of Dancy's RFC, the ALJ determined Dancy was unable to perform her past relevant work.  (R. 35).  Lastly, in Step Five, the ALJ considered Dancy's age, education, work experience, and RFC, and determined, based on the Medical Vocational

Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2, and on the testimony of a vocational expert ("VE"), that "there are jobs that exist in significant numbers in the national economy that [Dancy] can perform." *Id*. Because the ALJ answered Step Five in the negative, he determined that Dancy was not disabled. *Id.*

## V. Analysis

The court now turns to Dancy's contentions that the ALJ erred by failing to (1) find a period of disability of at least twelve months; (2) comply with Social Security Ruling ("SSR") 96-8p and SSR 96-9P; and (3) rely on a medical source opinion ("MSO") in his RFC determination. The court will examine each contention in turn.

**A. Disability Period**

In her first contention of error, Dancy summarizes the medical evidence until August 2009, *see* doc. 8 at 5-7,[2] and argues that "[t]he medical evidence reasonably supports a finding that a threshold period of disability of twelve months was established" between August 2008 and August 2009, *id*. at 7. On August 28, 2008, Dancy fell while doing "the hokey pokey" and injured her ankle. (R. 223). The following day, Dr. Marquita N. Hicks diagnosed "an oblique fracture of the left malleolus." (R. 224). In September 2008, Dr. Rena L. Stewart encouraged Dancy to "complete the charity care process in anticipation of getting [Dancy] started on some physical therapy" and continued to treat Dancy "non-operatively." (R. 231). By October 30, 2008, Dr. Stewart reported that while Dancy was "still fairly tender over her fracture site[, s]he is completely healed." (R. 229). Based on the medical evidence, the state agency Single Decision-

---

[2] Relying on Dr. Walter Doty's opinion that Dancy's asthma and ovarian cyst would be disabling for "1-2 years" on January 28, 2010, (R. 280), Dancy also briefly suggests that she would meet the twelve month threshold after August 2009. However, "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." *N.L.R.B. v. McClain of Georgia, Inc.,* 138 F.3d 1418, 1422 (11th Cir. 1998). Moreover, the ALJ discredited Dr. Doty's opinion because it was conclusory and inconsistent with other evidence. (R. 34-34). Dancy does not challenge this finding, and the court finds it was supported by substantial evidence. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (finding good cause to discredit a physician's opinion for being conclusory and/or inconsistent); 20 C.F.R. § 404.1527.

Maker ("SDM") determined on November 6, 2008, that while Dancy's ankle injury "keeps [her] from working at the present time," she would be able to return to her prior work within twelve months. (R. 64). In making this determination, the SDM opined that Dancy would be capable of medium work by November 2009, twelve months after the hokey pokey incident. (R. 234); 20 C.F.R. § 404.1567(c).

Dancy argues that the SDM's finding that she could not return to work in November 2008, coupled with her "very late start to [] physical therapy which began in January 2009," doc. 8 at 6, indicate a disability period of at least twelve months. At the outset, the court notes Dancy appears to be asking this court to review the ALJ's decision *de novo*. However, this court does "not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Moreover, "[e]ven if … the evidence preponderates against the [Commissioner's] decision, [the court] must affirm if the decision is supported by substantial evidence." *Id*. (citations omitted). Even more significantly, "SDM-completed forms are not opinion evidence at the appeals level," *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871-72 (11th Cir. 2012) (quoting POMS § DI 24510.050), and "are entitled no weight," *Malone v. Colvin*, 5:12-CV-514-LSC, 2013 WL 4502075, at *4 (N.D. Ala. Aug. 22, 2013).[3] Consequently, the ALJ was not required to credit the SDM's opinion. In fact, the ALJ weighed the evidence independently and reached a different decision than the SDM – i.e. unlike the SDM who found Dancy could perform medium work,

---

[3] Dancy appears to also contends that the ALJ erred by relying on the RFC portion of the SDM's finding when she notes that the ALJ gave "some weight to the … [SDM] RFC [evaluation] even though not prepared by an M.D." Doc. 8 at 7. Any such error would not require reversal because the "consideration of a single decision maker's opinion is harmless error, as long as the ALJ did not place 'great weight' on the opinion, and the ALJ's decision is based on *other* substantial medical evidence of record." *Pitman v. Astrue*, CV-11-S-3179-S, 2012 WL 2476418, at *4 (N.D. Ala. June 22, 2012) (emphasis original) (citing *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 265-66 (11th Cir. 2009)). Moreover, the ALJ found that, despite the SDM's opinion that Dancy was capable of medium work, Dancy could only perform work at the sedentary level. (R. 29, 234).

the ALJ found Dancy could perform work at the sedentary level. (R. 29, 234). There is no error here because the medical evidence provides substantial support for the ALJ's decision.

Dancy further argues that the ALJ erred by failing to "bifurcate his findings in any way to reflect consideration of the period of onset [August 2008] up to August 2009." Doc. 8 at 7. Dancy, however, does not cite to any legal authority for the proposition that the ALJ is required to bifurcate his findings. *See Robbins v. Colvin*, 2:12-CV-674-CSC WO, 2014 WL 1239824, at *4 (M.D. Ala. Mar. 25, 2014) (declining to require the ALJ to bifurcate his findings "in a case of progressive healing"). Significantly, the ALJ considered the medical evidence both before and after Dancy's ankle injury, (R. 29-34), and concluded that Dancy could perform sedentary work, (R. 29). This RFC determination was supported by substantial evidence, and the court will "defer to the Commissioner's decision." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

**B. SSR 96-8p and SSR 96-9p**

Dancy contends next that the ALJ's RFC assessment did not include a function-by-function assessment as required by SSR 96–8p. Specifically, Dancy contends the ALJ failed to discuss Dancy's postural and environmental limitations. SSR 96-8p provides that an ALJ needs to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." 1996 WL 374184. To satisfy this requirement, the ALJ must assess the claimant's functional limitations and restrictions and then express the functional limitations in terms of exertional levels. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220 F. App'x 957, 959–60 (11th Cir. 2007). In the present case, the ALJ offered a thorough review of the record, (R. 29-33), and properly considered all of Dancy's alleged functional limitations, including her postural, (R. 34),

and environmental, (R. 33-34), limitations.  Consequently, like in *Freeman*, "[w]hile the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability [Dancy] claimed." 220 F. App'x. at 960. Accordingly, the ALJ complied with SSR 96–8p.

Likewise, contrary to Dancy's contention, the ALJ also complied with SSR 96-9p,[4] which states that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." 1996 WL 374185.  The ALJ specifically stated that Dancy could stand and walk for two hours and sit for six hours in an eight hour workday. (R. 29, 60).[5]  Moreover, the VE opined that this limitation would not preclude work as a telephone quotation clerk, eyeglass frames polisher, or optical goods assembler, (R. 60), and Dancy has not pointed the court to any evidence that her sitting and/or standing limitations would preclude her from performing these jobs. *See Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005) ("[The claimant] failed to offer any evidence that [she] could not perform the unskilled jobs identified by the [VE] based on [her] ability to sit or stand for any period of time.").  Thus, the ALJ did not commit reversible error in his evaluation of Dancy's ability to sit and stand.

**C. Medical Source Opinion (MSO)**

For her final contention of error, Dancy argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ did not rely on a medical source opinion (MSO) "or RFC in the specific format required … under SSR 96-8p." Doc. 8 at 10. This contention is also unavailing because the RFC assessment is not a medical assessment, and the ALJ is not required to rely on a MSO or an RFC from a physician. *Langley v. Astrue*, 777 F.

---

[4] In the body of her brief, Dancy states SSR 83-12 rather than SSR 96-9p. Doc. 8 at 8. However, the requirement that a sit/stand option be "delineated in terms of time to be spent in each posture" is found in SSR 96-9p. *Id.*

[5] In fact, it is not even clear that the ALJ, either in his hypothetical to the VE or his RFC finding, found that Dancy needed a sit/stand option. (R. 29, 60). The ALJ never used the phrase "sit/stand option;" rather, the VE listed jobs that could be performed by an individual who required a sit/stand option. *Id.*

Supp. 2d 1250, 1261 (N.D. Ala. 2011) ("Binding precedent does not require an RFC from a physician . . . ."). Rather, as Dancy acknowledged, the "responsibility for deriving an RFC rests squarely with the ALJ (20 CFR 404.1546(c)), and there is no express requirement for an MSO or RFC assessment [from a physician] to be of record in order for the ALJ to make RFC findings." Doc. 8 at 10. Here, the ALJ reviewed the record, including the medical evidence in assessing Dancy's RFC. Because the substantial evidence supports the ALJ's RFC, there is no error here.

### VI. Conclusion

Based on the foregoing, this court concludes that the ALJ's determination that Dancy is not disabled is supported by substantial evidence and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. The court will enter a separate order to that effect simultaneously.

**DONE** the 29th day of September 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE